# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JUDITH BURNICK,

          Plaintiff,

v.                                                  Case No. 14-C-1173

OFFICE AND PROFESSIONAL
EMPLOYEES INTERNATIONAL UNION,
and OFFICER AND PROFESSIONAL
EMPLOYEES INTERNATIONAL UNION
LOCAL 35,

          Defendants.

## DECISION AND ORDER

Judith Burnick filed a complaint alleging claims under the Labor Management Relations Act and the Employees Retirement Income Security Act ("ERISA") against Office and Professional Employees Union ("OPIEU") and OPEIU's Local 35. Before me now is OPEIU's motion to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## I. BACKGROUND

The following background facts are based on the allegations of plaintiff's first amended complaint, which I must accept as true for purposes of deciding the motion to dismiss. See, e.g., CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore, 769 F.3d 485, 486 (7th Cir. 2014).

---

[1]The relevant motion is OPEIU's motion to dismiss the first amended complaint. Although OPEIU had previously moved to dismiss the original complaint, Burnick's filing the amended complaint rendered that motion moot.

Between 1978 and 2008, Burnick was employed by Local 35 as a business manager. During that time, Burnick was a member of the Wisconsin Office, Technical, Professional Employees Union ("Employees Union"). On May 9, 2001, Local 35 entered into a collective bargaining agreement with the Employees Union which provided, among other things, that retirees would be entitled to certain health, dental, vision, and life insurance coverage for life. In 2005, while this collective bargaining agreement was in effect, Burnick retired. After she retired, Burnick continued to work for Local 35 on a part-time basis. In 2008, Burnick signed a letter of agreement with Local 35 that contained further provisions concerning her entitlement to health insurance during retirement. On April 12, 2008, Burnick terminated her part-time employment with Local 35.

By August 2011, OPEIU rather than Local 35 was paying the premiums for Burnick's health and dental insurance coverage. That same month, Burnick contacted her life insurer to change the beneficiary and discovered that the policy had been cancelled for failure to pay the premiums.

A short time later, on October 28, 2011, OPEIU placed Local 35 into trusteeship. A trusteeship is a device by which an international union assumes temporary control of its local. Procedures relating to trusteeships are usually included in the union constitution governing the relationship between the international and its locals. See 29 U.S.C. § 462. The OPEIU constitution contains such provisions. See OPEIU const., art. XV; Decl. of Yingtao Ho, Ex. 1.[2] International unions may decide to place a local into trusteeship for various reasons, such as correcting corruption or financial distress. See 29 U.S.C. § 426.

---

[2]Although the OPEIU constitution is not attached to the complaint, the parties agree that I may consider it in connection with OPEIU's motion to dismiss.

In her complaint, Burnick does not expressly identify the reason OPEIU placed Local 35 into trusteeship. However, Burnick's allegations concerning Local 35's failure to pay her insurance premiums suggest that OPEIU placed Local 35 in trusteeship because it was in financial distress.

Pursuant to the OPEIU constitution, once a local is placed in trusteeship,[3] OPEIU's president assumes charge of the local and appoints a trustee to manage the affairs of the local. OPEIU const., art. XV, § 4. All "funds, properties, books and assets" of the local must be turned over to the trustee. Id. In the present case, OPEIU's president appointed Patt Gibbs, an employee of OPEIU, to serve as trustee of Local 35. The assets of the local, which comprised approximately $50,000 in cash, some office furniture and equipment, and the income stream consisting of the monthly dues paid by Local 35's more than 800 members, were turned over to Gibbs. Gibbs exercised complete control over Local 35 until the summer of 2014, when OPEIU's president replaced her with a different trustee, Susan French.

While Local 35 was in trusteeship, Gibbs decided to stop paying the premiums for Burnick's vision insurance. However, the premiums for Burnick's health and dental insurance continued to be paid through March 2014. Burnick alleges that the premiums were actually paid by OPEIU rather than Local 35.

On March 6, 2014, Gibbs sent a letter to Burnick informing her that her dental insurance would be cancelled as of the end of the month. In that letter, Gibbs also informed her that she anticipated that OPEIU would be extinguishing Local 35's charter

---

[3]The provisions of the OPEIU constitution pertaining to trusteeships use the term "suspend" rather than "trusteeship."

and that therefore Local 35 would cease to exist. Burnick alleges that, around this time, OPEIU was exploring the possibility of merging Local 35 and another OPEIU local, Local 9. Burnick alleges that, to facilitate the merger, OPEIU offered to assume Local 35's liabilities. Burnick does not allege that this merger ever occurred or that OPEIU expressly agreed to assume any of Local 35's liabilities. (However, as discussed below, Burnick contends that OPEIU implicitly assumed Local 35's obligation to provide her with insurance benefits.)

Burnick alleges that her retiree health benefits have been provided to her through the OPEIU Local 153 Health Fund. In late 2014, this entity announced that, as of January 1, 2015, it would no longer provide medical insurance to participants. At the same time, OPEIU informed retirees that they were eligible to elect to continue to receive health benefits through a separate PPO plan. However, Burnick alleges that no one has informed her whether she would continue to receive health coverage after January 1, 2015. She also alleges that both OPEIU and Local 35 have decided that she would stop receiving health benefits as of January 1, 2015.[4]

Burnick alleges that Local 35 currently lacks the financial resources to fulfill its agreement to provide her with life, dental, vision, and health insurance for life. Burnick also alleges that, when OPEIU initiated the trusteeship, it intended to dissolve or merge Local 35 out of existence. However, Burnick does not allege that Local 35 has been dissolved

---

[4]I note that the amended complaint contains inconsistent allegations concerning the status of Burnick's health coverage. Burnick alleges that no one has told her whether she would continue to receive health coverage after January 1, 2015, but then she also alleges that the decision has been made to terminate her coverage as of January 1, 2015. In any event, whether or not Burnick's health coverage has been terminated does not effect the outcome of OPEIU's motion to dismiss.

4

or merged, and it is clear that Local 35 continues to exist, as it has appeared in this action through counsel and filed an answer to Burnick's amended complaint. The complaint does not indicate whether or not Local 35 remains in trusteeship; however, OPEIU states in its brief that the trusteeship has ended and that Local 35 is once again under control of its members. Reply Br. at 7 n.4. For purposes of the present motion, I will assume that OPEIU remains under trusteeship.

## II.  DISCUSSION

Plaintiff has commenced this action against both Local 35 and OPEIU to enforce her right to life, dental, vision, and health insurance coverage. She alleges claims for breach of the collective bargaining agreement and the 2008 letter agreement under § 301 of the Labor Management Relations Act and a claim for denial of benefits under § 502 of ERISA. As noted, Local 35 has appeared and filed an answer. OPEIU, however, has moved to dismiss any claims against it on the ground that Burnick has not alleged facts from which it can plausibly be inferred that it is independently liable for Local 35's alleged obligation to provide her with insurance benefits. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

The parties agree that an international union and its locals are separate entities and that the international is not automatically liable for the obligations of its locals. See Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212, 217 (1979). However, Burnick contends that OPEIU is independently responsible for providing her with insurance benefits for three reasons: (1) under principles of agency law, any actions taken by Local 35 during the trusteeship, including cancelling Burnick's insurance benefits, are attributable to OPEIU;

(2) OPEIU implicitly assumed Local 35's obligation to provide her with insurance benefits; and (3) OPEIU is Local 35's successor and therefore liable for all of Local 35's obligations.

First, Burnick alleges that when OPEIU placed Local 35 under the control of a trustee, OPEIU assumed control over Local 35. No doubt this is true. Under the OPEIU constitution, when the international "suspends" a local, the international's president "assumes charge of the affairs and business" of the suspended local and exercises control over the local through an appointed trustee. OPEIU const., art XV, § 4. The trustee is answerable to, and may be replaced by, OPEIU's president, and thus is an agent of OPEIU.[5] However, to the extent Burnick is arguing that OPEIU's control of Local 35 during the trusteeship somehow renders OPEIU independently liable for Local 35's obligation to provide her with insurance benefits, that argument fails. Local 35's obligation arose under the 2001 collective bargaining agreement and the 2008 letter agreement. Burnick does not contend that at the time Local 35 entered into these agreements, it was under the control of OPEIU or signed the agreements on behalf of OPEIU.[6] What Burnick does contend is that at the time Local 35 <u>breached</u> those agreements it was under the control

---

[5]Of course, the trustee is not an agent of OPEIU for all purposes, only for purposes of managing the business of Local 35. In other words, the scope of the trustee's authority is limited to managing the business of Local 35 during the trusteeship. See Restatement (Third) of Agency § 2.02 (2006). Thus, the trustee has no authority to, say, enter into a contract on behalf of OPEIU rather than Local 35. See U.S. Equal Employment Opportunity Comm'n v. Ceres Terminals, Inc., No. 99 C 5320, 2001 WL 109811, at *8 (N.D. Ill. Feb. 5, 2001) (trustee operating local on behalf of international cannot create liability for international unless trustee "ha[s] the power to affect the legal relations of the [international]").

[6]The amended complaint includes some allegations suggesting that OPEIU tried to exercise control over Local 35 shortly before it commenced the trusteeship, but no allegations suggest that Local 35 was controlled by OPEIU in 2001 or 2008.

of OPEIU through the trustee. But it does not follow from the fact that OPEIU controlled Local 35 at the time of the breach that Burnick may satisfy any judgment she obtains against the assets of OPEIU rather than the assets of Local 35. Only if OPEIU at some point assumed the underlying obligation could it be independently liable for the breach. Thus, I turn to the question of whether Burnick has alleged facts suggesting that OPEIU assumed Local 35's obligation to provide her with insurance benefits for life.

Burnick offers two theories to support her claim that OPEIU assumed Local 35's obligation to provide her with insurance benefits: (1) OPEIU implicitly assumed the obligation when it "acquired" Local 35's assets during the trusteeship, and (2) OPEIU assumed the obligation by becoming Local 35's "successor" during the trusteeship. Notably, Burnick does not allege that OPEIU expressly assumed the obligation by entering into a contract with Local 35 in which it agreed to assume the obligation.

In support of the first theory, Burnick cites cases recognizing that, in some instances, a corporate entity that purchases the assets of another entity can implicitly assume certain liabilities of the seller entity. See, e.g., Gen. Foam Fabricators v. Tenneco Chem. Inc., 695 F.2d 281, 287 (7th Cir. 1986). Burnick contends that these cases are pertinent because, under the OPEIU constitution, when a local is placed in trusteeship it must turn over its assets to the trustee, who is OPEIU's agent. However, when a trusteed local turns its assets over to the trustee, it is not accurate to say that OPEIU has "acquired" the local's assets in the sense used in the corporate successor-liability context. In a corporate asset sale, the acquiring company actually purchases the assets and may use them to conduct its own business. See, e.g., John Matheson, Successor Liability, 96 Minn. L. Rev. 371, 380 (2011). Under the OPEIU constitution, when the trustee receives the

7

assets, he or she must hold them in trust for the benefit of the suspended local and manage and expend them only for such purposes as are necessary to conduct the business of the suspended local. OPEIU const., art. XV, § 4; see also Campbell v. Int'l Bhd. of Teamsters, 69 F.Supp.2d 380, 385 (E.D.N.Y. 1999) ("A trustee assumes the duties of the local union officer he replaces and is obligated to carry out the interests of the local union and not the appointing entity."). Thus, OPEIU has not purchased the assets and could not, without breaching the union constitution, use the assets for OPEIU's own purposes. Indeed, if Burnick prevails on her claim against Local 35, and at that time Local 35 is still under OPEIU's control through the trusteeship, the assets will be available to satisfy Burnick's judgment, as paying the judgment would be part of the business of Local 35, which the trustee is required to conduct. Thus, the main policy rationale underlying the concept of imputing liability to an asset acquirer—ensuring that an injured party will be able to use the assets to satisfy a judgment—is not present here. See Matheson, supra, at 382–83.

Burnick argues that OPEIU should be deemed to have implicitly assumed Local 35's obligation to provide her with insurance benefits for life because OPEIU paid some of the premiums on Local 35's behalf. Burnick alleges that OPEIU started paying the premiums for her health and dental insurance sometime before August 2011, which was before the trusteeship was imposed, and continued to pay the premiums during the trusteeship. However, no authority suggests that OPEIU's making payments towards the obligations of Local 35 resulted in its implicitly assuming those obligations. Burnick cites cases in which corporate asset purchasers were deemed to have implicitly assumed a seller's obligation by engaging in conduct that caused the seller's contracting party to reasonably

8

believe either that the purchaser had assumed the obligation or that no asset sale had occurred. See Gen. Foam Fabricators, 695 F.2d at 287; City of Richmond v. Madison Mgmt. Group, Inc., 918 F.2d 438, 451 (4th Cir. 1990); Dual-Temp. v. Hench Control Corp., No 09-cv-595; 2014 U.S. Dist. LEXIS 139666, *10–11 (N.D. Ill. Sept. 30, 2014).[7] In this case, however, Burnick does not allege that OPEIU made any representations to her which suggested that it had assumed the obligation to provide her with insurance benefits or that it engaged in any other conduct that caused Burnick to conclude that it had assumed the contract. To the contrary, Burnick states in her brief that no one ever told her that OPEIU, rather than Local 35, was making the payments. Br. in Opp. at 22. Moreover, as noted, Local 35 never sold its assets to OPEIU, and so OPEIU's paying some of Burnick's insurance premiums without her knowledge did not give her the false impression that no asset sale had occurred. Thus, the corporate asset-sale cases do not support the conclusion that OPEIU implicitly assumed Local 35's obligation to provide Burnick with insurance benefits.

Burnick's argument that OPEIU is Local 35's "successor" also fails. Her argument is that because OPEIU's placing Local 35 into trusteeship suspended Local 35's autonomy, Local 35 was in effect "absorbed" into OPEIU. Br. in Opp. at 24. In other words, Burnick contends that OPEIU's placing Local 35 into trusteeship was the equivalent of a merger

---

[7]Burnick also cites a case in which the court identified a question of fact as to whether an asset purchaser agreed to assume a particular liability. See Florom v. Elliott Mfg., 867 F.2d 570, 574–76 (10th Cir. 1989). However, Burnick does not contend that Local 35 and OPEIU explicitly agreed that OPEIU would assume the obligation to provide her with insurance benefits. Rather, she contends that even though OPEIU did not agree to assume the obligation, it should be deemed to have done so by voluntarily paying some of the premiums. Thus, Florom is inapposite.

9

of Local 35 into OPEIU. But this argument is based on the false premise that Local 35 ceased to exist as a separate entity during the trusteeship. Under the OPEIU constitution, Local 35 continued to exist as an entity during the trusteeship. OPEIU const., art. XV, § 4. It is true that while it was under the control of the trustee, Local 35 was not autonomous, in the sense that it was no longer under the control of officials elected by the membership of the local. But a local can continue to exist as an entity even if it is not autonomous, just like a business in receivership or under the control of a bankruptcy trustee can continue to exist. Unlike in the case of a corporate merger, see Matheson, supra, at 377–79, in the case of a union trusteeship, the assets and liabilities of the local do not become the assets and liabilities of the international. Instead, the assets are held in trust for the benefit of the local, and the trustee conducts the affairs and business of the local until the local is either dissolved, merged with another local, or reinstated as an autonomous local. OPEIU const., art. XV, § 4. Thus, a local under trusteeship is not "absorbed" into the international.

Burnick points out that she has alleged that when OPEIU placed Local 35 into trusteeship, its intent was to dissolve Local 35 or merge it with another local. First Am. Compl. ¶ 34. But even if that was OPEIU's intent, Burnick does not allege that OPEIU has in fact dissolved Local 35 or merged it with another local, and OPEIU's intent to do something in the future is not relevant to whether it is currently the successor of Local 35.[8] On the facts alleged in the first amended complaint, Local 35 continues to function as a separate entity, even if it is not autonomous.

---

[8]Also, should Local 35 at some point in the future merge with another local, the surviving local, and not OPEIU, would be Local 35's successor.

Burnick also cites to a nine-factor test that courts have used to determine whether one union is the successor to a defunct union and therefore liable for the defunct union's debts. See Local Union No. 5741 v. N.L.R.B., 865 F.2d 733, 737 (6th Cir. 1990).[9] But there is no indication that this test should be used in the case of a union trusteeship. Rather, the test is designed to determine whether one local union has in effect taken over the business, debts, and membership of another local union. As just explained, a local union under trusteeship continues to exist and function as a separate entity, and thus it makes no sense to ask whether some other union is its successor. Thus, the nine-factor test is simply not relevant to the question of whether an international is the "successor" to a local that it has placed in trusteeship.

With respect to her ERISA claim, Burnick alleges that OPEIU is independently liable for providing her with insurance benefits because it was the entity that controlled "the plan"—i.e., her right to insurance benefits as established by the 2001 collective bargaining agreement and the 2008 letter agreement—at the time of the termination of benefits. But again, although it is true that the trustee controlled Local 35 (and therefore possibly also the plan), it is not true that OPEIU is independently liable for satisfying the plan's

---

[9]The factors are: (1) whether the successor union had notice of the liability; (2) the ability of the predecessor union to provide relief; (3) whether there has been a substantial continuity of the union's operations; (4) whether the successor union uses the same offices or encompasses the same jurisdiction; (5) whether the successor union has absorbed the predecessor's membership; (6) whether the officers of the predecessor union continued in some official capacity in the successor union; (7) whether the wages, terms and conditions of employment administered by the predecessor, as set forth in the collective bargaining agreement, are the same or substantially equivalent to those administered by the successor; (8) whether the members continue to pay dues and enjoy the same membership rights; and (9) whether the members continue to work at the same trade for the same or similar employers. Local 5741, 865 F.2d at 737.

11

obligations. Rather, Local 35 remained a separate entity, and under the OPEIU constitution the decisions made by the trustee with respect to the plan were made on behalf of Local 35 rather than OPEIU. Burnick also contends that OPEIU's paying some of the premiums for her insurance turned it into the "sponsor" of her plan. No authority supports this contention. An ERISA plan sponsor is analogous to a trust's settlor—it creates the basic terms and conditions of the plan and executes a written instrument containing those terms. See CIGNA Corp. v. Amara, __ U.S. __, 131 S. Ct. 1866, 1877 (2011). In the present case, the plan was created by the collective bargaining agreement between Local 35 and the Employees Union, and possibly also the 2008 letter agreement. OPEIU was not a party to any of these agreements. Also, as discussed, OPEIU never assumed any obligations created by those agreements. Thus, OPEIU's paying some of Burnick's insurance premiums without assuming any continuing obligation to do so did not transform it into a plan sponsor that is liable for continuing to provide vested benefits.

Finally, I address one last allegation of Burnick's complaint, which relates to the termination of her dental benefits only. Burnick alleges that at the time her dental insurance was cancelled, OPEIU was exploring the possibility of merging Local 35 with another OPEIU local, Local 9. Burnick alleges that, "as an inducement to facilitate the merger, OPEIU had agreed that should the merger occur, it rather than Local 9 would assume Local 35's liabilities." First Am. Compl. ¶ 33. Burnick then alleges that the trustee cancelled Burnick's dental coverage so that, should a merger occur, OPEIU would not have to assume Local 35's obligation to provide her with dental coverage.

As far as the first amended complaint reveals, no merger of Locals 9 and 35 occurred. However, the allegation that the trustee cancelled Burnick's dental insurance in

12

order to reduce Local 35's liabilities and therefore lessen the amount of Local 35 debt that OPEIU would have to assume if the merger occurred seems to raise an issue as to whether the trustee cancelled the insurance in order to benefit OPEIU rather than Local 9. If the trustee acted for this reason, she may have caused OPEIU to breach the union constitution, which, as I have repeatedly noted, requires the trustee to act in the interests of the suspended local rather than the interests of OPEIU. OPEIU const. art. XV, § 4. However, Burnick does not assert any claim against OPEIU or the trustee for breach of the union constitution. See Wooddell v. Int'l Bhd. of Elec. Workers, 502 U.S. 93, 98–103 (1991) (union member may sue to enforce international union constitution); Korzen v. Local Union 705, 75 F.3d 285, 288 (7th Cir. 1996) (same). In any event, Burnick does not explicitly allege that Local 35 did not benefit from the decision to cancel her insurance or that the trustee was not acting in the interests of Local 35 when she made the decision to cancel.

Accordingly, Burnick has not stated claims for relief against OPEIU.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that OPEIU's motion to dismiss the first amended complaint is **GRANTED** and that OPEIU is dismissed as a defendant.

**IT IS FURTHER ORDERED** that OPEIU's motion to dismiss the original complaint is **DENIED** as **MOOT**.

Dated at Milwaukee, Wisconsin, this 27th day of April, 2015.

                                          s/ Lynn Adelman

                                          LYNN ADELMAN
                                          District Judge